**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**CHICAGO DIVISION**

| | | |
|---|---|---|
| MILLIONAIRE MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action Case No. _____ |
| | ) | |
| v. | ) | Judge |
| | ) | |
| JOHN DOE subscriber assigned IP address 24.13.32.89, | ) | Magistrate Judge |
| | ) | |
| Defendant. | ) | |
| | ) | |

**COMPLAINT-ACTION FOR DAMAGES FOR**
**PROPERTY RIGHTS INFRINGEMENT**

Plaintiff, Millionaire Media, LLC ("Plaintiff"), sues Defendant, John Doe subscriber IP address 24.13.32.89 ("Defendant"), and alleges:

**Introduction**

1.      This matter arises under the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101, *et seq.* (the "Copyright Act").

2.      Defendant is an egregious online infringer of Plaintiff's copyrights.  Indeed, Defendant's IP address as set forth on Exhibit "A" was used without authorization to illegally distribute seven different copyrighted works owned by Plaintiff as set forth on Exhibit "B."

3.      Plaintiff is the registered owner of the copyrights set forth on Exhibit B (the "Copyrights-in-Suit").

**Jurisdiction and Venue**

4.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question); and 28 U.S.C. § 1338 (patents, copyrights, trademarks and unfair competition).

5.     Plaintiff used proven IP address geolocation technology which has consistently worked in similar cases to ensure that the Defendant's acts of copyright infringement occurred using an Internet Protocol address ("IP address") traced to a physical address located within this District and, therefore, this Court has personal jurisdiction over the Defendant because: (i) Defendant committed the tortious conduct alleged in this Complaint in this State, and (ii) Defendant resides in this State and/or (iii) Defendant has engaged in substantial and not isolated business activity in this State.

6.     The geolocation technology used by Plaintiff has proven to be accurate to the District level in over 99% of the cases filed by undersigned.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c), because: (i) a substantial part of the events or omissions giving rise to the claims occurred in this District; and, (ii) the Defendant resides (and therefore can be found) in this District and resides in this State; additionally, venue is proper in this District pursuant 28 U.S.C. § 1400(a) (venue for copyright cases) because Defendant or Defendant's agent resides or may be found in this District.

**Parties**

8.     Plaintiff is a limited liability company organized and existing under the laws of the State of Florida, and has its principal place of business located at 80 S.W. 8th Street, Suite 2000, Miami, FL 33130.

9.  Plaintiff only knows Defendant by his, her or its IP address. Defendant's IP address is set forth in the style of the case.

10.  Defendant's Internet Service Provider can identify the Defendant.

**Factual Background**

I.  *Plaintiff Has Invested Significant Sums in the Development, Promotion and Sale of the Educational Stock Trading Works Covered by the Copyrights-in-Suit*

11.  Plaintiff is owned and operated by renowned stock trader Timothy Sykes who has evolved into one of the financial industry's most recognized educators and experts within various facets of the equity and stock option trading arenas. Mr. Sykes's analysis has been featured in myriad industry journals and he has been personally featured on many financial industry, as well as mainstream, news broadcasts. Mr. Sykes has developed an entire business line focused on providing educational services to thousands of students situated across 60 countries.

12.  As part of his business and educational efforts, Mr. Sykes, through Plaintiff, produces, markets and sells instructional written materials and DVDs in the field of stock trading that are covered by the Copyrights-in-Suit.

13.  Mr. Sykes, through Plaintiff, has expended substantial amounts in the production, reproduction, marketing, sales and distribution of the works covered by the Copyrights-in-Suit through national and international live events, and through promotion on television, online and diverse media outlets.

II.  *Defendant Used the BitTorrent File Distribution Network to Infringe Plaintiff's Copyrights*

14.  The BitTorrent file distribution network ("BitTorrent") is one of the most common peer-to-peer file sharing systems used for distributing large amounts of data, including, but not limited to, written publications, audiovisual works and other digital media files.

15.  BitTorrent's popularity stems from the ability of users to directly interact with

3

each other in order to distribute a large file without creating a heavy load on any individual source computer and/or network. The methodology of BitTorrent allows users to interact directly with each other, thus avoiding the need for intermediary host websites which are subject to DMCA take-down notices and potential regulatory enforcement actions.

16.     In order to distribute a large file, the BitTorrent protocol breaks a file into many small pieces called bits. Users then exchange these small bits among each other, instead of attempting to distribute a much larger digital file.

17.     After the infringer receives all of the bits of a digital media file, the infringer's BitTorrent client software reassembles the bits so that the file may be opened and utilized.

18.     Each bit of a BitTorrent file is assigned a unique cryptographic hash value.

19.     The cryptographic hash value of the bit ("bit hash") acts as that bit's unique digital fingerprint. Every digital file has one single possible cryptographic hash value correlating to it. The BitTorrent protocol utilizes cryptographic hash values to ensure each bit is properly routed among BitTorrent users as they engage in file sharing.

20.     The entirety of the digital media file also has a unique cryptographic hash value ("file hash"), which acts as a digital fingerprint identifying the digital media file (e.g., a video). Once infringers complete downloading all bits which comprise a digital media file, the BitTorrent software uses the file hash to determine that the file is complete and accurate.

21.     Plaintiff's infringement detection company, Excipio GmbH ("Excipio") established a direct TCP/IP connection with Defendant.

22.     Excipio downloaded from Defendant one or more bits of a digital media file (the "Infringing File"). The Infringing File was given the name the Timothy Sykes Collection by the initial seeder.

23.     The Infringing File is a zip file that contains a variety of both text and video files owned by Plaintiff.  Within this zip file are the following seven (7) audiovisual works:

   **(i.)**     **PennyStocking**
   **(ii.)**    **PennyStocking PartDeux**
 **(iii.)**    **Shortstocking**
  **(iv.)**    **TIMFUNDAMENTALS**
   **(v.)**    **TIMfundamentals PART DEUX**
  **(vi.)**    **TIMRAW**
 **(vii.)**    **TIMTACTICS**

24.     Plaintiff is the author of each of the seven works listed above contained within the Infringing File.

25.     Each of the above seven works in the Infringing File is registered with the U.S. Copyright Office.  *See* Exhibit B for a list of titles cross referenced to a list of registration numbers.  Collectively, the copyrights covering these works are referred to herein as the "Copyrights-In-Suit."

26.     Plaintiff did not authorize its copyrighted works to be distributed as part of one file nor did Plaintiff consent or agree to its works being distributed as part of a compilation. Instead, the initial seeder illegally combined the individual works into one zip file and then created a .torrent file to distribute these works.

27.     The Infringing File has a cryptographic file hash value of 4f7fa6edd6bb1e13b5af478fbae4daafab968f51.

28.     Defendant downloaded, copied, and distributed a complete copy of each of the seven Copyrights-in-Suit in the Infringing File.

29.     Excipio downloaded from Defendant one of more bits of the Infringing File.

30.     Excipio further downloaded a full copy of the Infringing File, unzipped it, and reviewed each of the seven works contained in it.  Excipio also reviewed the original seven

works as provided by Plaintiff and confirmed that each of the works from the Infringing File is identical, or substantially similar, to its corresponding original work.

31.     At no time did Excipio upload Plaintiff's copyrighted content to any other BitTorrent user.

32.     Although there are multiple infringing transactions from Defendant's IP address, the most recent infringing transaction recorded by Excipio (as of the date of this filing) is set forth on Exhibit A.

33.     Exhibit B lists the title for each of the seven Copyrights-in-Suit, their registration numbers, registration dates, and dates of first publication.

34.     Each infringing transaction is recorded in a PCAP.  A PCAP is akin to a video recording.  Here, the recording is of a transaction between the infringer's computer and Excipio's computer.  Through each transaction, Defendant distributed a "bit" of the Infringing File.  The PCAP shows Defendant's IP address, and the "bit" that was distributed.  Excipio verified that the "bit" that was distributed belongs to the Infringing File by calculating its hash value.

**Miscellaneous**

35.     All conditions precedent to bringing this action have occurred or been waived.

36.     Plaintiff has retained counsel and is obligated to pay said counsel a reasonable fee for its services.

**COUNT I**
**Direct Infringement Against Defendant**

37.     The allegations contained in paragraphs 1-36 are hereby re-alleged as if fully set forth herein.

38.     Plaintiff is the owner of the Copyrights-in-Suit each of which covers an original work of authorship.

6

39.     By using BitTorrent, Defendant copied and distributed the constituent elements of each of the works covered by the Copyrights-in-Suit.

40.     Plaintiff did not authorize, permit or consent to Defendant's distribution of its works.

41.     As a result of the foregoing, Defendant violated Plaintiff's exclusive right to:

(A)     Reproduce the works in copies, in violation of 17 U.S.C. §§ 106(1) and 501;

(B)     Redistribute copies of the works to the public by sale or other transfer of ownership, or by rental, lease or lending, in violation of 17 U.S.C. §§ 106(3) and 501;

(C)     Perform the copyrighted works, in violation of 17 U.S.C. §§ 106(4) and 501, by showing the works' images in any sequence and/or by making the sounds accompanying the works audible and transmitting said performance of the works, by means of a device or process, to members of the public capable of receiving the display (as set forth in 17 U.S.C. § 101's definitions of "perform" and "publically" perform); and

(D)     Display the copyrighted works, in violation of 17 U.S.C. §§ 106(5) and 501, by showing individual images of the works nonsequentially and transmitting said display of the works by means of a device or process to members of the public capable of receiving the display (as set forth in 17 U.S.C. § 101's definition of "publically" display).

42.     Defendant's infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

**WHEREFORE**, Plaintiff respectfully requests that the Court:

(A)     Permanently enjoin Defendant and all other persons who are in active concert or participation with Defendant from continuing to infringe Plaintiff's copyrighted works;

(B)     Order that Defendant delete and permanently remove the digital media files

relating to Plaintiff's works from each of the computers under Defendant's possession, custody or control;

(C)     Order that Defendant delete and permanently remove the infringing copies of the works Defendant has on computers under Defendant's possession, custody or control;

(D)     Award Plaintiff statutory damages per infringed Work pursuant to 17 U.S.C. § 504-(a) and (c);

(E)     Award Plaintiff its reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505; and

(F)     Grant Plaintiff any other and further relief this Court deems just and proper.

## DEMAND FOR A JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

SCHULZ LAW, P.C.

By:     /s/ *Mary K. Schulz*
        Mary K. Schulz, Esq.
        1144 E. State Street, Suite A260
        Geneva, Il 60134
        Tel: (224) 535-9510
        Fax: (224) 535-9501
        Email: schulzlaw@me.com